**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Case No. 1:17-CV-20846-Ungaro/O'Sullivan

TRANSUNION RISK AND ALTERNATIVE
DATA SOLUTIONS, INC.,

                                            **JURY TRIAL DEMANDED**

      Plaintiff,

v.

COGINT, INC. *f/k/a* IDI, INC., and
INTERACTIVE DATA, LLC,

Defendants.

_____/

**AMENDED COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), plaintiff Transunion Risk and

Alternative Data Solutions, Inc. ("TRADS") files this Amended Complaint against defendants

Cogint, Inc. *f/k/a* IDI, Inc. ("Cogint") and Interactive Data, LLC ("Interactive") and states as

follows:

**INTRODUCTION**

1.      TRADS and Cogint (through its affiliates, predecessors, and successors, including

Interactive) are competitors in the burgeoning multi-billion dollar "data fusion" industry.  A

nascent player in the industry, Cogint has repeatedly pursued every conceivable unlawful

shortcut to commercial success by engaging in unfair competition – most of which has come at

the expense of TRADS' contractual and property rights.  Undeterred by adverse court rulings,

Cogint simply finds new illicit tactics.  This case centers around Cogint's infringement of

TRADS' trademark rights associated with its data fusion product, TLOxp®, and the

misappropriation of the goodwill and business reputation associated with this trademark.

2.      Cogint's history as a bad actor and willingness to break all rules that govern fair competition has a long story-arc. Cogint has, among other things, falsely claimed to own the intellectual property assets lawfully acquired by TRADS for $154 million, prompting the Bankruptcy Court for the Southern District for Florida to sanction Cogint (then known as IDI, Inc.). At the same time, Cogint poached TRADS' critical senior employees and thought leaders, despite full knowledge that these employees were bound by restrictive covenants, which prohibited them from disclosing confidential information about, or competing with, TRADS. Cogint burned these contracts to rocket-launch its data fusion operations and products. The Courts again had to step in to regulate Cogint's bad behavior, enjoining two of TRADS' former critical senior employees from working with Cogint's predecessors and affiliated entities, including Interactive.[1]

3.      With the aid of information acquired from TRADS' former head of the data development team, Cogint was able to expeditiously unfurl a rival data fusion product, idiCORE. Cogint then embarked on a marketing campaign that prominently displayed the TLOxp® trademark owned by TRADS in a false and misleading manner, designed to cause confusion and legitimize its fledgling, competing product. TRADS never authorized or consented to Cogint's use of the TLOxp® trademark in connection with its promotion of idiCORE.

---

[1] After TRADS filed its original complaint, Cogint filed a motion to dismiss asserting that Interactive is Cogint's subsidiary, that Interactive (not Cogint) is the party that has used the TLOxp® trademark in its advertisements, and that Interactive (not Cogint) released the idiCORE product. (*See* D.E. 15). Despite Cogint's claim of a clear line of demarcation between these entities, in truth, both Cogint and Interactive (through their predecessors) have periodically – depending on whether it suited their particular interests at the moment – represented in court filings, as well as on the websites bearing the TLOxp® trademark, that they are one and the same entity and/or the successor/predecessor of the other. Nevertheless, rather than engage in wasteful litigation on a satellite issue, TRADS is naming both Cogint and Interactive as defendants in the Amended Complaint since they are managed as one entity and have, by all accounts, actively and directly participated in a joint scheme to promote idiCORE at the expense of TLOxp®. TRADS does so without in any way conceding that Cogint and Interactive are distinct or that Cogint is not responsible, as Interactive's successor or otherwise, for Interactive's actions at issue here.

4.      Cogint's unauthorized use of the TLOxp® trademark to promote idiCORE was – and still is – patently confusing and deceiving.  As graphically depicted herein, Cogint's prominent display of the TLOxp® trademark in its idiCORE advertisements, and description of idiCORE as originating from "the primary systems architect" of TLOxp®, are intentionally designed to deceive the consuming public into believing that TLOxp® is a data fusion product owned and developed by, or otherwise affiliated with, Cogint and/or that TRADS sponsors, endorses or approves idiCORE.

5.      At the time TRADS filed its initial complaint in this action on March 3, 2017, Cogint's advertisements and promotional materials for idiCORE failed to expressly disclaim that TLOxp® was a rival product owned and developed by a different company, TRADS.  Cogint cunningly attempted to dispense with its legal obligation to identify TLOxp® as a rival product with a purposefully obscure and vague disclaimer, in miniscule font, positioned far below the TLOxp® trademark, which stated that "product names and trademarks are the property of their respective owners, which are in no way associated or affiliated with IDI."

6.      This "non-disclaimer" was legally deficient.  It did nothing to alleviate the actual confusion caused by the idiCORE advertisements.  Instead, it highlighted Cogint's true intent: to cloak idiCORE – a then-new product with no track record – with the legitimacy, goodwill and brand reputation of TLOxp®.  Cogint's idiCORE ads, together with its "non-disclaimers," intentionally, willfully and maliciously infringed the TLOxp® trademark and trade on its goodwill and business reputation.

7.      In a tacit admission of the illegality of its advertisements, Cogint slightly altered some of its advertisements and disclaimers *after* TRADS filed its original complaint.  Cogint

nonetheless continues to prominently display the TLOxp® trademark on, among other things, the home page for Cogint's and Interactive's websites.

8.     Cogint's deceitful marketing campaign for idiCORE has resulted in existing and prospective clients of TRADS expressing confusion about the source of TLOxp®, its affiliation with Cogint, and TRADS' sponsorship, endorsement or approval of idiCORE.  TRADS' clients have, for example, asked TRADS' sales representatives whether idiCORE "is the same" as TLOxp® and whether TRADS and Cogint "are affiliated."   This purposeful confusion is intended to, and has resulted in, altering purchasing decisions, steering prospective clients toward idiCORE and away from TLOxp®.

9.     Cogint's and Interactive's unlawful conduct has caused and continues to cause irreparable harm to the public and to TRADS, which must be immediately and permanently enjoined.  Cogint's and Interactive's unlawful conduct has resulted in substantial losses and actual damages upon TRADS, which must be adequately compensated, and is sufficiently egregious as to merit trebled and punitive damages.

## Nature of the Action

10.     This is an action at law and in equity for trademark infringement and unfair competition arising under Sections 32(a) and 42(a) of the Trademark Act of 1946, 15 U.S.C. § 1051 *et seq.* ("Lanham Act"), 15 U.S.C. §§ 1114, 1125(a), and the common law of the State of Florida.

## Parties, Jurisdiction and Venue

11.     TRADS is a Delaware corporation authorized to transact business in Florida. TRADS is a wholly owned subsidiary of TransUnion.

12.     Cogint is a Delaware corporation with its principal place of business in Palm

Beach County, Florida. Cogint was formerly known as IDI, Inc. ("IDI") and, by its own admission, as The Best One, Inc. ("TBO").

13.     Interactive is a Georgia corporation with its principal place of business in Palm Beach County, Florida. Cogint and Interactive (through their predecessors) have at times represented in court filings, as well as on the websites bearing the TLOxp® trademark, that they are one and the same entity and/or the successor/predecessor of the other.

14.     TRADS and Cogint (through its affiliates, predecessors, and successors, including Interactive) are direct competitors in the highly competitive, multi-billion dollar data fusion industry.

15.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1338 and 1367(a). Jurisdiction of this Court is specifically conferred by the Lanham Act, 15 U.S.C. §§ 1114, 1121 and 1125 (federal question jurisdiction).

16.     This Court has personal jurisdiction over Cogint and Interactive because their offices are located in, and they conduct business in, the Southern District of Florida.

17.     Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391 as the events giving rise to this action have occurred in this district, among other places. In particular, Cogint's and Interactive's infringing advertisements have targeted and reached consumers throughout this district, including in Miami-Dade County.

18.     All conditions precedent to the prosecution of this action have been satisfied, fulfilled, extinguished, waived or otherwise executed.

## FACTUAL BACKGROUND

**A.     TRADS Acquires TLO, its Intellectual Property and its Critical Senior Employees**.

19.     Hank Asher founded TRADS' predecessor data fusion company, TLO LLC ("TLO"), in 2009.  Asher had previously developed and sold several data fusion/data mining companies, including Database Technologies and Seisint, Inc., resulting in his moniker as the "father of data fusion."

20.     Built on an architecture of supercomputers running proprietary linking and assessment algorithms, TLOxp® instantaneously filters search queries through a massive repository of public and proprietary data.  Through a process known as data fusion, TLOxp® stitches or "fuses" data from numerous databases to provide a comprehensive view of an individual, business, or asset.  TLOxp® is primarily used by the law enforcement community to locate suspects or witnesses, but it was also used in a variety of other industries, including private investigators, collections, insurance and retail.

21.     Like many start-ups, TLO lost money in its nascent stages, but attracted clients, generated buzz and evinced considerable promise.  In January 2013, however, Asher unexpectedly passed away.  Asher's death proved to be a significant set back from which TLO could not recover.

22.     On May 9, 2013, TLO filed for Chapter 11 bankruptcy protection.  Numerous potential buyers expressed interest in TLO, including Michael Brauser (founder of the company, which after several name changes and corporate machinations, is now Cogint), who executed a non-disclosure agreement and was, therefore, permitted to conduct due diligence into TLO and was given access to TLO's confidential and proprietary information.  Ultimately, when the prospective purchase price rose, Brauser did not bid on TLO.

23.     In December of 2013, pursuant to an order of the Bankruptcy Court issued on notice to Brauser, TRADS acquired substantially all of the assets of TLO for $154 million, including TLO's intellectual property.  Inclusive among the purchased assets was "BOLT," a proprietary language used by TLO to fuse disparate data sets together, and BParser, a "code converter" that converted the proprietary BOLT language to C++, a universal programming language.  These assets are the primary programming components of TLOxp®.

24.     After acquiring substantially all of TLO's assets, TRADS employed or contracted TLO's critical senior employees, including: (1) Derek Dubner (TLO's General Counsel, as counsel for TRADS); (2) James Reilly (TLO's Senior Vice President of Sales and Business Development, with the same title and position for TRADS); (3) Daniel MacLachlan (TLO's Chief Financial Officer, with the same title and position for TRADS); and (4) Surya Challa (a computer programmer, with the same title and position for TRADS).

25.     Reilly, MacLachlan and Challa all signed confidentiality, non-disclosure, non-competition, and non-solicitation agreements as a condition of their employment with TLO (the "Restrictive Covenant Agreements").

26.     As a condition of their employment with TRADS, and in exchange for substantial compensation, Reilly, MacLachlan, and Challa all expressly agreed to the assignment of the Restrictive Covenant Agreements to TRADS.

**B.     Brauser Forms TBO, Poaches TRADS' Top Employees and is Sanctioned for Improperly Asserting an Ownership Interest in TRADS' Intellectual Property**.

27.     In September of 2014, Brauser formed a company for the purpose of improperly asserting ownership to intellectual property, including BOLT and BParser, that TRADS, with Brauser's knowledge, had acquired from TLO pursuant to the Bankruptcy Court order.  In the first hint of Cogint's ultimate intention, Brauser named his company TBO (short for "The Best

One") in an obvious attempt to trade upon the goodwill of, and cause confusion with, TLO (which Asher named as "The Last One," signifying that TLO was to be his last data fusion company).  (Since then, Cogint has at times described TBO as a wholly-owned subsidiary, but it has even gone further in court proceedings, representing that it is the same entity as TBO and that it simply changed its name, first to IDI and ultimately to Cogint.)

28.     Upon forming TBO, Brauser also started plundering TRADS' senior employees. TBO first hired Dubner (who, while no longer working at TRADS, was bound to honor his ethical/fiduciary obligations as TLO/TRADS' former counsel) and then, in progressive order: Reilly, MacLachlan, and Challa (all of whom were then working at TRADS).  All four were restricted from competing against TRADS by virtue of either ethical/fiduciary duties (Dubner) or non-competition agreements (Reilly, MacLachlan and Challa).

29.     On October 14, 2014, Cogint entered into an agreement with Ole Poulsen, a computer programmer who had served as TLO's "Chief Science Officer," by which Cogint ostensibly purchased BParser (the asset acquired by TRADS during the TLO bankruptcy) for the modest sum of $250,000.  In their agreement, Cogint and Poulsen acknowledged that they were aware that the Bankruptcy Court had previously approved the sale of BParser from TLO to TRADS.  Cogint then hired Poulsen as its "Chief Science Officer."

30.     Stated differently, Cogint implausibly claimed to have purchased for $250,000, the same intellectual property that TRADS had purchased ten months earlier for $154 million (paying more than ***600 times*** as much as Cogint).

31.     TRADS filed an action in Bankruptcy Court seeking a declaration that TRADS, not Cogint, was the owner of BParser.  *See Transunion Risk & Alternative Data Sols., Inc. v. The Best One, Inc.*, Adv. No. 14-01793 (Bankr. S.D. Fla.).

32.     After extensive and costly litigation, including a seven-day trial, the Bankruptcy Court entered, on August 18, 2016, final judgment in TRADS' favor and an 82-page order holding Cogint in contempt for knowingly violating the TLO bankruptcy sale order by improperly asserting an ownership interest in TRADS' intellectual property.  Accordingly, the Bankruptcy Court sanctioned Cogint, ordering it to pay TRADS' substantial attorney's fees and costs.  The Bankruptcy Court's order is attached as **Exhibit 1**.

### C.     Cogint Infringes TRADS' Trademark in TLOxp® and Misappropriates TLOxp®'s Goodwill and Brand Reputation.

33.     TLO obtained federal registrations of the TLO® and TLOxp® trademarks (the "TLO® marks") from the United States Patent and Trademark Office on June 14, 2011.

34.     The TLO® marks consist of standard characters forming the term "TLO" (U.S. Reg. No. 3,977,597, filed on November 1, 2010, and issued on June 14, 2011).  The second mark consists of standard characters forming the term "TLOxp" (U.S. Reg. No. 3,977,605, filed on November 1, 2010, and issued on June 14, 2011).  Both trademarks were registered for use in connection with goods and services relating to "providing access to databases" and "computer services, namely, providing search engines for obtaining data on a global computer network." (True and correct copies of the certificates of registration for the TLO® and TLOxp® trademarks are attached hereto as **Exhibits 2 and 3**).

35.     In acquiring TLO, TRADS also acquired its registered trademarks, including TLO® and TLOxp®, assigning both marks to itself on December 16, 2013, and recording the assignment the same day.  Consequently, TRADS is the owner of the TLO® marks.  (A true and correct copy of the trademark assignment is attached hereto as **Exhibit 4**.)

36.     After acquiring TLO, TRADS continued to use the name, TLOxp®, for its data fusion product given that both the product and the product's mark possessed goodwill and brand

reputation within the data fusion industry.

37.     TRADS still actively uses the TLO® marks by, among other things, using and maintaining the website http://www.tlo.com/, which prominently features TLOxp® as its core product.

38.     TRADS also prominently displays the TLOxp® mark in all of its promotional materials and literature regarding this product, including online advertising and social media posts, such as on its Facebook®, LinkedIn® and Twitter® pages. (*See, e.g.*, https://www.facebook.com/TransUnionTLOxp; https://www.linkedin.com/company/tloxp; https://twitter.com/tlo_xp?lang=en.).

39.     TRADS provides notice to the public that it owns the TLOxp® registered trademark by using the ® symbol immediately following the standard character mark, as shown in the following excerpt from its website:



(*See*     http://www.tlo.com/about-tloxp, attached hereto as **Exhibit 5**; *see also* https://www.facebook.com/TransUnionTLOxp; https://www.linkedin.com/company/tloxp; https://twitter.com/tlo_xp?lang=en.)

40.     TLO's and, after being acquired, TRADS' use of the TLOxp® trademark has been continuous and unchallenged.  TLOxp®'s brand reputation resulted from the expenditure of substantial resources by TLO and later by TRADS.

41.     As a result of the success and prominence of the TLOxp® brand– which presently has a user base exceeding 100,000 daily users – TRADS has become an industry leader in data fusion industry, and the TLOxp® mark has become synonymous with TRADS.   TRADS conducts business and has clients in all 50 states in the United States.

42.     The TLOxp® trademark is, therefore, a vital asset of significant value of critical importance to TRADS and is distinctive within the industry as being associated with TRADS.

43.     TRADS and Cogint are direct competitors in the data fusion industry.  They offer essentially the *same* products to the *same* industries and compete for the *same* clients.

44.     Since Brauser formed Cogint, it has developed and released two competitive products to the marketplace: idiBASIC in early 2015 and idiCORE in May of 2016.   The recently released idiCORE is Cogint's first truly competitive product to TLOxp®.

45.      In marketing its products, Cogint has repeatedly and intentionally used the TLOxp® trademark – without TRADS' authorization – in a manner purposefully designed to cause confusion, mistake and to deceive, in order to profit from the goodwill and brand reputation associated with TLOxp®.

46.     Cogint has plastered the TLOxp® trademark on all of its advertisements and promotional materials for its rival idiCORE product, including on popular social networking sites.  The following illustrative images constitute some of the presently known examples of Cogint's exploitation of the TLOxp® trademark and misappropriation of its goodwill and brand reputation.

47. The first example was prominently displayed at the top of the landing page for Cogint's website, with the following statement:



(*See* http://ididata.com/ (last visited March 3, 2017), attached hereto as **Exhibit 6**.)

48. Next to the registered trademark symbol of TLOxp®, there was no disclaimer, asterisk or any other qualifying language that would alert a browsing prospective client that TLOxp® is not owned by or otherwise affiliated with Cogint. This purposefully opaque language also resulted in uncertainty as to whether the phrase "primary systems architect" refers to Cogint or some other company or individual. A plain common sense reading of this phrase reasonably leads an existing or prospective client to conclude that: (i) TLOxp® is owned and developed, or affiliated with, Cogint; and/or (ii) the unidentified owner of TLOxp® sponsors, endorses, or approves idiCORE.

49. The only "clarification" that Cogint provided was an inconspicuous and barely legible "non-disclaimer" – which, tellingly, was in the smallest font displayed on Cogint's landing page and distantly below its unauthorized use of the TLOxp® trademark, following blocks of text promoting Cogint's products in larger-sized font. The miniscule "non-disclaimer" vaguely, and in general terms, stated: "Product names and trademarks are the property of their respective owners, which are in no way associated or affiliated with IDI." The use of this "non-disclaimer" highlighted Cogint's true intention: to cloak its unestablished product with the legitimacy, goodwill and brand reputation of TLOxp®.

50. Tellingly, after TRADS filed this lawsuit, Cogint changed its landing page in an apparent attempt to remedy its blatant infringement. Specifically, Cogint added an asterisk next

to the infringing use of the TLOxp® trademark.  (*See* http://ididata.com/ (last visited April 19, 2017), attached hereto as **Exhibit 7**.)  Cogint also added the following underlined language: "From the primary systems architect of <u>competitor products</u> Accurint® and TLOxp®.*"  (*See id.*)  Cogint also changed the language of its "non-disclaimer" to identify TransUnion, TRADS' parent company, as the owner of the TLOxp® trademark and "IDI's Chief Science Officer" as the primary systems architect of TLOxp®.  (*See id.*)  Cogint also moved the non-disclaimer so it appears slightly higher on the landing page, even though it is still in the smallest font displayed on Cogint's landing page and distantly ***below*** Cogint's unauthorized use of the TLOxp® trademark and ***after*** blocks of text promoting Cogint's products in ***larger-sized*** font.  (*See id.*)  Accordingly, Cogint's landing page still displays the TLOxp® trademark in a false and misleading manner.

51.     A second example was found on Cogint's webpage for the idiCORE product:



(*See* http://ididata.com/solutions/idicore/ (last visited March 2, 2017), attached hereto as **Exhibit 8**.)

52.     Unlike the first example, an asterisk appeared next to the infringing use of the TLOxp® trademark.  However, the asterisk was not specifically tethered to the previously

referenced "non-disclaimer."  Moreover, the "non-disclaimer" was buried at the bottom of the webpage and appeared only *after* other unrelated disclaimers which were displayed in ***larger-sized*** font.  Compounding matters, Cogint parroted the marketing language that TRADS uses in promoting TLOxp®, co-opting the terms "latest generation," "proprietary linking," and "actionable data."  (*Compare* Exhibits 5 and 8.)

53.     After TRADS filed this lawsuit, Cogint changed its webpage for the idiCORE product in an apparent attempt to remedy its blatant infringement.  (*See* http://ididata.com/solutions/idicore/  (last visited April 19, 2017), attached hereto as **Exhibit 9**.) In particular, Cogint now identifies TLOxp® as a "competitor product[]" owned by TransUnion. (*See id.*)  Cogint also changed the phrase "latest generation" to "next generation" and the phrase "actionable data" to "actionable intelligence."  (*See id.*)   Cogint nonetheless continues to prominently feature the TLOxp® trademark in the headline for its idiCORE webpage.  (*See id.*) Accordingly, the idiCORE webpage still displays the TLOxp® trademark in a false and misleading manner.

54.     A third example was found in Cogint's LinkedIn® page, which provided, without any disclaimer:



(*See*  https://www.linkedin.com/company/interactive-data-llc  (last visited March 3, 2017), attached hereto as **Exhibit 10**.)  Cogint's LinkedIn® page also vaguely claimed that Cogint's

founders and management "have created two of today's leading information solutions providers," yet failed to expressly identify those providers.  (*Id.*)

55.     After TRADS filed this lawsuit, in a tacit admission of its wrongdoing, Cogint edited its LinkedIn® page to remove any express references to TLOxp®.  (*See* https://www.linkedin.com/company/interactive-data-llc (last visited April 19, 2017), attached hereto as **Exhibit 11**.)

56.     In each of the three examples described above, Cogint's name, ***not*** Interactive's name, is prominently featured.  Each example bears a logo with the phrase "IDI" and explanation that IDI is "a cogint company."  (*See* Exs. 6-11.)  Cogint also has another website that directly links to the "IDI" website.  (*See* http://cogint.com/brand/idi/ (last visited April 19, 2017), attached hereto as **Exhibit 12**.)  Although there are small, fine-print notices indicating that Interactive owns a copyright in the infringing advertisements, the name "Interactive Data, LLC" does not appear anywhere in the actual advertisements.  Thus, a reasonable consumer would believe that Cogint *f/k/a* IDI, not Interactive, is responsible for the infringing advertisements.

57.     Cogint and Interactive, by and through their shared management and employees, actively and directly participated in a joint scheme to promote idiCORE at the expense of TLOxp®.

58.     Cogint and Interactive have an apparent or actual partnership and have authority to bind one another in transactions with third parties or exercise joint ownership or control over idiCORE and the infringing advertisements.  Alternatively, they have aided and abetted each in promoting idiCORE at the expense of TLOxp®.

59.     Cogint's unauthorized use of the TLOxp® trademark in these examples was and continues to be misleading and intentionally designed to suggest that: (i) Cogint owns or

develops, or is affiliated with, TLOxp®; and/or (ii) the unnamed owner of TLOxp® sponsors, endorses, or approves idiCORE.  These examples also reflect Cogint's targeting of TRADS' existing and prospective clients, as Cogint is marketing its competing product through the same outlets (the internet, specifically the company websites and popular social networking sites).

60.     Cogint's unauthorized use of the TLOxp® trademark in connection with the promotion of idiCORE is both ongoing and prevalent.  Discovery will likely lead to additional instances of Cogint's infringement of the TLOxp® trademark and misappropriation of the goodwill and brand reputation associated with the same.

61.     TRADS' existing clients, as well as prospective clients, have expressed confusion to TRADS' sales representatives regarding the provenance of the TLOxp® data fusion product, its affiliation with Cogint, and whether TRADS offers, sponsors, endorses, approves or otherwise affiliated with idiCORE.  TRADS' sales representatives have been asked, for example, whether TLOxp® is "the same" as idiCORE, and whether TRADS and Cogint "are affiliated" in some way.  The actual confusion exhibited by TRADS' existing clients dispenses of the question as to whether Cogint's intentionally misleading advertisements are likely to cause confusion. Cogint's use of TRADS' TLOxp® trademark is not just likely to cause confusion, it has resulted in actual confusion.

62.     TRADS has never authorized Cogint or Interactive to use the TLOxp® trademark in connection with any goods or services.

**D.     Cogint's Unauthorized Use of the TLOxp® Trademark and Unfair Competition Have Injured TRADS and Hurt its Bottom Line.**

63.     Cogint's unauthorized use of the TLOxp® trademark and unfair competition have accomplished their objective: to misappropriate TRADS' existing and prospective clients, and

quickly launch into the data fusion space "off the back" of TRADS' senior leadership, hard-earned success, brand recognition and trademarks.

64.     In its SEC Form 10-K for the 2015 fiscal year, Cogint reported $6.4 million in annual revenues in connection with its data fusion products, $1 million of which was earned in the third quarter of 2015.  Since unfurling idiCORE in May of 2016 and releasing its infringing, misappropriating, and misleading advertisements, Cogint reported ***$14.8 million in the third quarter of 2016 alone*** from its data fusion business.

65.     During this same approximate time period, TRADS has lost more than 1,000 clients, which has impacted TRADS' annual revenues by at least $5 million.

66.     This $5 million loss is a small fraction of the injury to TRADS' bottom line that has resulted from the actual confusion caused by Cogint's infringing idiCORE ads, and has been compounded by Cogint's strategy of targeting TRADS' smaller clients through the use of pricing pressure in the infringing sales literature and presentations.

67.     An example of Cogint's malicious trademark infringement and marketing war against TRADS aimed at stealing its clients is found in a full-page ad that Cogint recently published in *Collection Advisor* and *PI Magazine*, two popular trade magazines for TRADS' small clients:



(*See* *Collection* *Advisor* (January/February 2017), *available* *at* https://issuu.com/collectionadvisor/docs/january_february_2017, and *PI Magazine* (April 2017), both of which are attached hereto as **Exhibit 13**.)   *Collection Advisor* and *PI Magazine* are distributed to businesses and consumers in, among other places, Miami-Dade County.

68.     TRADS believes that many of its current and former clients are now doing business with Cogint.   This belief is based on, among other statements, Cogint's June 6, 2016 press release boasting that "[i]n just 32 days since the commercial release of idiCORE (May 2, 2016), Cogint has **on-boarded 2,800 users**." (*See IDI Announces Business Update on idiCORE,* http://ididata.com/2016/06/idi-announces-business-update-idicore/ (June 6, 2016), attached hereto as **Exhibit 14**).   Additionally, as mentioned above, after releasing idiCORE in May of 2016, Cogint reported $14.8 million in data fusion revenue in the third quarter of 2016, ***almost***

*three times* what it made in the entire preceding year, and *over fourteen times* what it made in the same quarter during the prior year.

69.     The full extent to which TRADS' blood loss has led to a direct blood transfusion to Cogint is unclear without the aid of court-supervised discovery, given that Cogint's clients are bound by confidentiality agreements.

70.     Cogint's unauthorized use of the TLOxp® trademark and unfair competition, together with Cogint's other tortious conduct (which has, in large part, been addressed by other judicial decisions), has enabled Cogint to expeditiously, but unfairly gain a foothold in the competitive data fusion market at TRADS' expense.

## COUNT I

### (Direct Federal Trademark Infringement of the TLOxp® Trademark – Lanham Act § 32 – against Cogint and Interactive)

71.     TRADS re-alleges and incorporates paragraphs 1 through 70.

72.     TRADS is the owner of valid and enforceable Federal Trademark Registrations for TLO® and TLOxp® for use in connection with goods and services relating to "providing access to databases" and "computer services, namely, providing search engines for obtaining data on a global computer network."

73.     For many years, TLO (since 2011) and TRADS (since 2013) have used and promoted TLOxp® in connection with information technology goods and services, and specifically the data fusion industry.  TRADS has expended great energies and marshalled significant resources into making the TLOxp® trademark distinctive and well-known.  TRADS has imbued the TLOxp® trademark with great value through its marketing and promoting of TLOxp® through, among other things, its website and popular social networking sites.

74.     Cogint and Interactive, by and through their shared management and employees, have actively and directly participated in a joint scheme to promote their rival data fusion products, notably idiCORE, at the expense of TLOxp®.  Specifically, Cogint and Interactive have used the TLOxp® trademark in connection with the marketing and promotion of idiCORE. This has caused actual confusion, deception and mistake in and among TRADS' existing and prospective clients by creating the false and misleading impression that: (i) TLOxp® is owned and developed by, or affiliated with, Cogint/Interactive; and/or (ii) TRADS sponsors, endorses, or approves idiCORE.

75.     Cogint's and Interactive's miniscule and misplaced "disclaimers" are patently and legally deficient, and do not prevent actual confusion with respect to: (i) the source of TLOxp® or its affiliation with Cogint/Interactive; or (ii) TRADS' sponsorship, endorsement, or approval of idiCORE.

76.     Cogint and Interactive have never been authorized by TRADS to use the TLOxp® trademark in connection with its data fusion products and services, nor has TRADS consented to such use.

77.     Cogint's and Interactive's actions constitute infringement of the TLOxp® trademark in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

78.     The actual confusion, mistake and deception engendered by Cogint's and Interactive's unauthorized use of the TLOxp® trademark has caused irreparable harm to the goodwill symbolized by TLOxp®, its affiliation with TRADS, and TRADS' reputation for quality and excellence.

79.     Unless enjoined, Cogint's and Interactive's activities will continue to cause actual confusion and deception to existing and prospective clients as well as impair TRADS' affiliation

with the TLOxp® trademark and its attendant goodwill and brand reputation, for which TRADS has no adequate remedy at law.

80.     Cogint's and Interactive's actions demonstrate an intentional, willful and malicious intent to trade on the goodwill and brand reputation associated with TRADS' federally registered TLOxp® trademark.

81.     Cogint's and Interactive's actions also demonstrate an intentional, willful and malicious intent to usurp the goodwill and brand reputation associated with TRADS' federally registered TLOxp® trademark, and to disparage the TLOxp® trademark in favor of its competing idiCORE data fusion product.

82.     Cogint and Interactive have caused and are likely to continue to causing substantial injury to the public and to TRADS, and TRADS is entitled to injunctive relief and to recover actual damages (including but not limited to revenues lost by TRADS), Cogint's and Interactive's profits, costs and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116 and 1117.

## COUNT II

### (Vicarious Federal Trademark Infringement of the TLOxp® Trademark – Lanham Act § 32 – against Cogint)

83.     TRADS re-alleges and incorporates paragraphs 1 through 70.

84.     Cogint and Interactive have an apparent or actual partnership.

85.     Cogint and Interactive have authority to bind one another in transactions with third parties.

86.     Cogint and Interactive exercise joint ownership or control over idiCORE and the infringing advertisements discussed herein.

87.     Accordingly, to the extent that Cogint is not directly liable for infringement of the TLOxp® trademark, Cogint is vicariously liable for the infringement committed by Interactive.

88.     As a result of Cogint's action or inactions, Cogint has caused and is likely to continue to causing substantial injury to the public and to TRADS, and TRADS is entitled to injunctive relief and to recover actual damages (including but not limited to revenues lost by TRADS), Cogint's profits, costs and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116 and 1117.

## COUNT III

### (Direct Federal Unfair Competition as to the TLOxp® Trademark – Lanham Act § 43(a) – against Cogint and Interactive)

89.     TRADS realleges and reincorporates by reference paragraphs 1 through 70.

90.     Through extensive use of the TLOxp® trademark, TRADS has developed goodwill rights in this trademark, and that goodwill is protected by, among other things, Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

91.     Cogint's and Interactive's unauthorized use of the TLOxp® trademark has caused actual confusion, deception and mistake in the minds of existing and prospective clients, by creating the false and misleading impression that: (i) TLOxp® is owned and developed, or affiliated with Cogint/Interactive; and/or (ii) TRADS sponsors, endorses or approves idiCORE.

92.     Cogint and Interactive have made false suggestions, representations, descriptions and designations of origin of TLOxp® in violation of 15 U.S.C. § 1125(a), and Cogint's and Interactive's activities have caused and, unless enjoined by this Court, will continue to cause actual confusion and deception to members of the public and, additionally, injury to TRADS' goodwill and reputation as embodied in the TLOxp® trademark, for which TRADS has no adequate remedy at law.

93.     Cogint's and Interactive's actions demonstrate an intentional, willful and malicious intent to trade on the goodwill associated with the TLOxp® trademark.

94.     Cogint's and Interactive's conduct has caused, and is likely to continue to cause, substantial injury to the public and to TRADS, and TRADS is entitled to injunctive relief and to recover actual damages (including but not limited to revenues lost by TRADS), costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1114, 1116 and 1117.

## COUNT IV

### (Vicarious Federal Unfair Competition as to the TLOxp® Trademark – Lanham Act § 43(a) – against Cogint)

95.     TRADS re-alleges and incorporates paragraphs 1 through 70.

96.     Through extensive use of the TLOxp® trademark, TRADS has developed goodwill rights in this trademark, and that goodwill is protected by, among other things, Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

97.     Cogint and Interactive have an apparent or actual partnership.

98.     Cogint and Interactive have authority to bind one another in transactions with third parties.

99.     Cogint and Interactive exercise joint ownership or control over idiCORE and the advertisements discussed herein.

100.    Accordingly, to the extent that Cogint is not directly liable for unfair competition, Cogint is vicariously liable for the unfair competition committed by Interactive.

101.    As a result of Cogint's action or inactions, TRADS is entitled to injunctive relief and to recover actual damages (including but not limited to revenues lost by TRADS), costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1114, 1116 and 1117.

## COUNT V

**(Direct Common Law Trademark Infringement against Cogint and Interactive)**

102.     TRADS realleges and reincorporates by reference paragraphs 1 through 101.

103.     TRADS owns and enjoys common law trademark rights in the characters, overall commercial impression and presentation reflected in the TLOxp® trademark.

104.     TLO, and later TRADS, have continuously and exclusively used the TLOxp® trademark in the ordinary course of business both before and after being registered with the United States Patent and Trademark Office.  TRADS has expended great energy and marshalled significant resources into making the TLOxp® trademark distinctive and well-known.  TRADS has imbued the TLOxp® trademark with great value through its marketing and promoting of TLOxp® through, among other things, its website and popular social networking sites.

105.     TRADS' use of the TLOxp® trademark has caused it to have a secondary, distinctive and unique meaning to the public.

106.     Cogint and Interactive, by and through their shared management and employees, have actively and directly participated in a joint scheme to promote their rival data fusion products, notably idiCORE, at the expense of TLOxp®.

107.     Specifically, Cogint and Interactive have used the TLOxp® trademark in connection with the marketing and promotion of idiCORE.  This has caused actual confusion, deception and mistake in and among TRADS' existing and prospective clients by creating the false and misleading impression that: (i) TLOxp® is owned and developed by, or affiliated with, Cogint/Interactive; and/or (ii) TRADS sponsors, endorses, or approves idiCORE.

108.     Cogint's and Interactive's miniscule and misplaced "disclaimers," stating that "product names and trademarks are the property of their respective owners, which are in no way associated or affiliated with IDI" are patently and legally deficient, and do not prevent actual

confusion with respect to: (i) the source of TLOxp® or its affiliation with Cogint/Interactive; or (ii) TRADS' sponsorship, endorsement, or approval of idiCORE.

109.    Cogint and Interactive have never been authorized by TRADS to use the TLOxp® trademark in connection with its data fusion products and services, nor has TRADS consented to such use.

110.    Cogint and Interactive intentionally chose to use the TLOxp® trademark for the precise purpose of creating actual confusion and misleading the public, in order to unlawfully divert prospective clients' purchasing decisions away from TLOxp® and toward idiCORE.

111.    By virtue of the acts alleged above, Cogint and Interactive have willfully, knowingly, maliciously and intentionally engaged in acts of trademark infringement under the common law of the State of Florida.

112.    Cogint and Interactive have caused and is likely to continue to cause substantial injury to the public and to TRADS, and TRADS is entitled to injunctive relief and to recover actual damages (including but not limited to revenues lost by TRADS), Cogint's and Interactive's profits, and costs and reasonable attorneys' fees.

113.    In light of the deliberate and malicious unauthorized use of the TLOxp® trademark, and the need to deter Cogint and Interactive from similar conduct in the future, TRADS is additionally entitled to punitive damages.

## COUNT VI

### (Vicarious Common Law Trademark Infringement against Cogint)

114.    TRADS re-alleges and incorporates paragraphs 1 through 101.

115.    Cogint and Interactive have an apparent or actual partnership.

116.    Cogint and Interactive have authority to bind one another in transactions with third parties.

117.    Cogint and Interactive exercise joint ownership or control over idiCORE and the infringing advertisements discussed herein.

118.    Accordingly, to the extent that Cogint is not directly liable for infringement of the TLOxp® trademark, Cogint is vicariously liable for the infringement committed by Interactive.

119.    As a result of Cogint's action or inactions, Cogint has caused and is likely to continue to causing substantial injury to the public and to TRADS, and TRADS is entitled to injunctive relief and to recover actual damages (including but not limited to revenues lost by TRADS), Cogint's profits, costs and reasonable attorneys' fees.

120.    In light of the deliberate and malicious unauthorized use of the TLOxp® trademark, and the need to deter Cogint from similar conduct in the future, TRADS is additionally entitled to punitive damages.

## COUNT VII

**(Direct Common Law Unfair Competition against Cogint and Interactive)**

121.    TRADS realleges and incorporates by reference paragraphs 1 through 101.

122.    Through extensive use of the TLOxp® trademark, TRADS has developed goodwill rights in this trademark, and that goodwill is protected by, among other things, the common laws of the state of Florida.

123.    Cogint's and Interactive's unauthorized use of the TLOxp® trademark has caused actual confusion, deception and mistake in the minds of existing and prospective clients, by creating the false and misleading impression that: (i) TLOxp® is owned and developed by, or affiliated with, Cogint/Interactive; and/or (ii) TRADS sponsors, endorses, or approves idiCORE.

124.    Cogint and Interactive have made false suggestions, representations, descriptions and designations of origin of TLOxp®, which constitute acts of unfair competition in violation of the common law of the State of Florida, and Cogint's and Interactive's activities have caused and, unless enjoined by this Court, will continue to cause actual confusion and deception to members of the public and, additionally, injury to TRADS' goodwill and reputation as embodied in the TLOxp® trademark, for which TRADS has no adequate remedy at law.

125.    Cogint's and Interactive's actions demonstrate an intentional, willful and malicious intent to trade on the goodwill associated with the TLOxp® trademark.

126.    Cogint and Interactive have caused and are likely to continue to cause substantial injury to the public and to TRADS, and TRADS is entitled to injunctive relief and to recover actual damages (including but not limited to revenues lost by TRADS), Cogint's and Interactive's profits, costs and reasonable attorneys' fees.

127.    In light of the deliberate and malicious unauthorized use of the TLOxp® trademark, and the need to deter Cogint and Interactive from similar conduct in the future, TRADS is additionally entitled to punitive damages.

<u>**COUNT VIII**</u>

**(Vicarious Common Law Unfair Competition against Cogint)**

128.    TRADS re-alleges and incorporates paragraphs 1 through 101.

129.    Cogint and Interactive have an apparent or actual partnership.

130.    Cogint and Interactive have authority to bind one another in transactions with third parties.

131.    Cogint and Interactive exercise joint ownership or control over idiCORE and the advertisements discussed herein.

132.    Accordingly, to the extent that Cogint is not directly liable for unfair competition, Cogint is vicariously liable for the unfair competition committed by Interactive.

133.    As a result of Cogint's action or inactions, Cogint has caused and is likely to continue to causing substantial injury to the public and to TRADS, and TRADS is entitled to injunctive relief and to recover actual damages (including but not limited to revenues lost by TRADS), Cogint's profits, costs and reasonable attorneys' fees.

134.    In light of the deliberate and malicious unauthorized use of the TLOxp® trademark, and the need to deter Cogint from similar conduct in the future, TRADS is additionally entitled to punitive damages.

<u>**Prayer for Relief**</u>

**WHEREFORE**, TRADS respectfully requests that this Honorable Court enter judgment it its favor and against Cogint and Interactive as follows:

***Injunctive Relief***

1.    Requiring Cogint and Interactive to immediately and permanently cease and desist from any and all further unlawful uses of the TLOxp® trademark, or any confusingly similar mark, including:

> Immediately removing, withdrawing, taking down and/or destroying all printed and digital materials advertisements and other items bearing the TLOxp® trademark, or any confusingly similar mark, in an unlawful manner, including but not limited to those posted by Cogint on the Internet at: http://ididata.com/ and http://ididata.com/solutions/idicore/.

2.    Ordering that Cogint and Interactive be required to immediately provide to all of its advertisers, distributors, retailers, suppliers, and all other with whom they do business a copy of the Court's injunction order, and otherwise inform them in writing that they must immediately cease, upon pain of contempt of court, the sale, distribution, marketing and advertising that

unlawfully uses the TLOxp® trademark, or any confusingly similar mark.

3.    Enjoining Cogint and Interactive from any and all future use of any word, term, name, symbol, device or other combination thereof which causes confusion, deception or mistake as to the affiliation, endorsement or relationship between TLOxp® and Cogint/Interactive, or between idiCORE and TRADS, or any false designation of origin with respect to TLOxp®.

4.    Enjoining Cogint and Interactive from further diluting or infringing on TRADS' rights in and to the TLOxp® trademark, appropriating and trading upon TLOxp®'s name, or otherwise damaging TLOxp®'s goodwill or business reputation.

5.    Directing that Cogint and Interactive file with the Court and serve upon TRADS' counsel within thirty (30) days after entry of Judgment a report in writing under oath setting forth in detail the manner and form in which Cogint and Interactive have complied with the requirements of any resulting injunction and imposed order.

***Monetary Damages***

6.    Awarding all damages caused by the acts forming the basis of the Complaint, including but not limited to revenues lost by TRADS.

7.    Awarding all ill-gotten amounts earned by Cogint and Interactive from the acts forming the basis of the Complaint.

8.    Awarding treble damages based on Cogint's and Interactive's knowing and intentional unauthorized use of the TLOxp® trademark, as provided for by 15 U.S.C. § 1117(a).

9.    Requiring Cogint and Interactive to pay TRADS for all of the costs, disbursements and reasonable attorneys' fees that TRADS has and will incur in this action pursuant to 15 U.S.C. § 1117(a).

10.     Awarding punitive damages based on Cogint's and Interactive's willful and deliberate infringement of the TLOxp® trademark, and to deter such future conduct.

**Other Relief**

11.     For such other and further relief as the court may deem appropriate to prevent the infringement, disparagement or dilution of the TLOxp® trademark, and to prevent further and/or additional acts of unfair competition by Cogint and Interactive.

12.     For prejudgment interest.

13.     For such other relief as the court deems proper.

## JURY TRIAL DEMAND

TRADS respectfully demands a trial by jury on all claims and issues so triable.

Dated:  April 20, 2017

By:  _/s/ James G. Sammataro_____
James G. Sammataro, Esq.
Florida Bar No. 520292
Brendan S. Everman, Esq.
Florida Bar No. 94696
Hans H. Hertell, Esq.
Florida Bar No.: 071969
**STROOCK & STROOCK & LAVAN LLP**
*Attorneys for plaintiff Transunion Risk and Alternative Data Solutions, Inc.*
200 South Biscayne Blvd., Suite 3100
Miami, Florida  33131
Telephone:  (305) 358-9900
Facsimile:  (305) 789-9302
Email:  jsammataro@stroock.com;
hhertell@stroock.com
beverman@stroock.com;
lacalendar@stroock.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served via

CM/ECF on April 20, 2017.


By: /s/  James G. Sammataro
James G. Sammataro

## SERVICE LIST

Dennis Richard, Esq.
Michael R. Tolley, Esq.
Douglas J. Giuliano, Esq.
RICHARD & RICHARD, P.A.
825 Brickell Bay Drive, Suite 1748
Miami, Florida 33131
Phone: 305-374-6688
dennis@richardandrichard.com
michael@richardandrichard.com
douglas@richardandrichard.com

James G. Sammataro, Esq.
Brendan S. Everman, Esq.
STROOCK & STROOCK & LAVAN LLP
200 S. Biscayne Boulevard, Suite 3100
Miami, Florida 33131
Telephone:  (305) 358-9900
Facsimile:  (305) 789-9302
jsammataro@stroock.com
beverman@stroock.com
lacalendar@stroock.com